## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>                     Remaining Debtors. | Chapter 11<br><br>Case No. 17-12560 (BLS)<br><br>(Jointly Administered) |
| MICHAEL GOLDBERG, in his capacity as Liquidating Trustee of the WOODBRIDGE LIQUIDATION TRUST,<br><br>                     Plaintiff,<br><br>           vs.<br><br>GREG WYLEN ANDERSON; PAULETTE ANDERSON, aka PAULA ANDERSON; LEENAN, LLC; BALANCED FINANCIAL, INC.,<br><br>                     Defendants. | Adversary Proceeding<br>Case No. 19-_____ (BLS) |

## COMPLAINT OBJECTING TO CLAIMS AND COUNTERCLAIMING FOR AVOIDANCE AND RECOVERY OF AVOIDABLE TRANSFERS, FOR EQUITABLE SUBORDINATION, FOR SALE OF UNREGISTERED SECURITIES, FRAUD, AND FOR AIDING AND ABETTING FRAUD

---

[1] The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172).  The Remaining Debtors' mailing address is 14140 Ventura Boulevard, Suite #302, Sherman Oaks, California  91423.

The Woodbridge Liquidation Trust (the "Liquidation Trust" or "Plaintiff") formed pursuant to the *First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors* dated August 22, 2018 (Bankr. Docket No. 2397) (as it may be amended, modified, supplemented, or restated from time to time, the "Plan"[2]), as and for its *Complaint Objecting to Claims and Counterclaiming for Avoidance and Recovery of Avoidable Transfers and for Equitable Subordination, and for Sale of Unregistered Securities, for Fraud, and for Aiding and Abetting Fraud* (this "Complaint") against Greg Wylen Anderson; Paulette Anderson, aka Paula Anderson; Leenan, LLC; and Balanced Financial, Inc. (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      Since at least August 2012 until shortly before they sought bankruptcy protection, Woodbridge Group of Companies, LLC and its many hundreds of debtor affiliates (collectively, the "Debtors") were operated by their founder and principal, Robert Shapiro ("Shapiro"), as a Ponzi scheme.  As part of this fraud, Shapiro utilized the Debtors to raise over one billion dollars from approximately 10,000 investors as either Noteholders or Unitholders (collectively, "Investors").

2.      Those Investors often placed a substantial percentage of their net worth (including savings and retirement accounts) with the Debtors and now stand to lose a significant portion of their investments and to be delayed in the return of the remaining portion.  The quality of the Investors' lives will likely be substantially and adversely affected by the fraud perpetrated by Shapiro.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

3.      Investors were often told that they were investing money to be loaned with respect to particular properties owned by third parties, that those properties were worth substantially more than the loans against the properties, and that they would have the benefit of a stream of payments from these third parties for high-interest loans, protected by security interests and/or mortgages against such properties.  In reality, these statements were lies.  Investors' money was almost never used to make high-interest loans to unrelated, third-party borrowers, there was no stream of payments, Investors' money was commingled and used for an assortment of expenses, including maintaining a lavish lifestyle for Shapiro and his family, brokers' commissions, overhead (largely for selling even more notes and units to investors), and payment of principal and interest to existing investors.  The money that was used to acquire property (almost always owned by a disguised affiliate) cannot be traced to any specific Investor.  These are typical characteristics of Ponzi schemes.

4.      Because the Debtors operated as a Ponzi scheme, obtaining new money from Investors into the Ponzi scheme conferred no net benefit on the Debtors; on the contrary, each new investment was a net negative.  Money was siphoned off to pay the expenses described above, so that the Debtors actually received only a fraction of the investment dollars.  New money also perpetuated the Ponzi scheme, enabling the Debtors to return fictitious profits to early Investors; in the absence of new investment, the house of cards would fall (as it eventually did).  At the same time, each investment created an obligation to return to the defrauded Investor 100% of the investment, such that each new investment increased the Debtors' liabilities and ultimately left them unable to satisfy their aggregate liabilities.

2

5.      The purpose of this lawsuit is (i) to object to the Claims (defined below) so that Defendant is not further compensated at the expense of legitimate creditors for activities that advanced the Ponzi scheme and further drove the Debtors into insolvency, (ii) to recover monies previously paid to Defendants by reason of these activities or as fictitious profits on the Claim, and (iii) to the extent the Claim, or any new or amended claims, survive, to equitably subordinate them.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this action under 28 U.S.C. §§ 157(a) and 1334. This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), (C), (F), and (H).  In any event, Plaintiff consents to entry of final orders or judgment by this Court.  Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

*The Liquidation Trust*

7.      On December 4, 2017 (the "Initial Petition Date"), certain of the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  Other of the Debtors also filed voluntary chapter 11 cases either on the Initial Petition Date or within the following four months (collectively, the "Bankruptcy Cases").

8.      On October 26, 2018, this Court entered an order confirming the Plan (Bankr. Docket No. 2903).

3

9.      The Plan provides for, *inter alia*, the establishment of the Liquidation Trust on the Effective Date of the Plan for the benefit of the Liquidation Trust Beneficiaries in accordance with the terms of the Plan and the Liquidation Trust Agreement.  *See* Plan §§ 1.75, 5.4.

10.     The Effective Date of the Plan occurred on February 15, 2019.

11.     On February 25, 2019, the Court entered an order closing the Bankruptcy Cases of all Debtors except Woodbridge Group of Companies, LLC and Woodbridge Mortgage Investment Fund 1, LLC (together, the "Remaining Debtors").  The Remaining Debtors' Bankruptcy Cases are being jointly administered under Case No. 17-12560 (KJC).

12.     On the Effective Date, the Liquidation Trust was automatically vested with all of the Debtors' and the Estates' respective rights, title, and interest in and to all Liquidation Trust Assets.  *See* Plan § 5.4.3.  Further, the Liquidation Trust, as successor in interest to the Debtors, has the right and power to file and pursue any and all Liquidation Trust Actions without any further order of the Bankruptcy Court.  *Id.* § 5.4.15.  "Liquidation Trust Actions" include, *inter alia*, "all Avoidance Actions and Causes of Action held by the Debtors or the Estates. . . ."  *Id.* § 1.76.

13.     In addition to its status as successor in interest to the Debtors and their estates, the Liquidation Trust also holds claims held by Investors who elected to contribute to the Liquidation Trust certain causes of action that those Investors possess against Defendants (the "Contributed Claims") attached hereto as Exhibit 3.  *Id.* § 1.28 (defining "Contributed Claims" to include "All Causes of Action that a Noteholder or Unitholder has against any Person that is not a Released Party and that are related in any way to the Debtors, their predecessors, their respective affiliates, or any Excluded Parties, including … all Causes of Action based on, arising

4

out of, or related to the marketing, sale, and issuance of any Notes or Units; … all Causes of Action based on, arising out of, or related to the misrepresentation of any of the Debtors' financial information, business operations, or related internal controls; and … all Causes of Action based on, arising out of, or related to any failure to disclose, or actual or attempted cover up or obfuscation of, any of the conduct described in the Disclosure Statement, including in respect of any alleged fraud related thereto").

*Defendants*

14.      Defendant Balanced Financial, Inc. ("Balanced") is a corporation operating and established in the State of Colorado.

15.      Defendant Greg Wylen Anderson ("Greg Anderson") is an individual residing in the State of Colorado.  Upon information and belief, Greg Anderson is the President of Balanced Financial Inc. and, and at all relevant times owned, operated and controlled it.

16.      Defendant Greg Anderson and Defendant Balanced sold Notes and Units to unsuspecting Investors, created marketing materials and sales scripts to facilitate the sale of Notes and Units to unsuspecting Investors (often targeting unsophisticated, elderly investors with Individual Retirement Accounts), and trained and supervised others who sold Notes and Units to unsuspecting Investors.  In so doing, Greg Anderson and Balanced made and caused others to make materially false and fraudulent statements to induce Investors to provide money.  In connection with such conduct, Greg Anderson and Balanced, directly or indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and of the mails.

DOCS_LA:325881.4 94811/003

17.     Defendant Leenan, LLC ("Leenan") is a limited liability company operating and established in the State of Colorado, with its principal place of business in Fort Collins, Colorado.  On information and belief, Defendant Greg Anderson owns and/or controls Leenan.

18.     Defendant Paulette Anderson, aka Paula Anderson, is an individual residing in the State of Colorado.  Upon information and belief, Paulette Anderson worked at Balanced Financial Inc. and is the wife of Defendant Greg Anderson.

### FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

*The Fraud*

19.     At least since July 2012 until shortly before they sought bankruptcy protection, the Debtors were operated as a Ponzi scheme.  As this Court explained in its order confirming the Plan:

> The evidence demonstrates, and the Bankruptcy Court hereby finds, that (i) beginning no later than July 2012 through December l, 2017, Robert H. Shapiro used his web of more than 275 limited liability companies, including the Debtors, to conduct a massive Ponzi scheme raising more than $1.22 billion from over 8,400 unsuspecting investors nationwide; (ii) the Ponzi scheme involved the payment of purported returns to existing investors from funds contributed by new investors; and (iii) the Ponzi scheme was discovered no later than December 2017.

20.     The securities sold by Defendants (*i.e.*, the Debtors' Notes and Units) were not registered with the Securities and Exchange Commission (the "SEC") or applicable state securities agencies and there was no applicable exemption from registration.  Nor were Defendants registered as broker-dealers with the SEC or applicable state agencies.

21.     Investors were often told that they were investing money to be loaned with respect to particular properties owned by third parties, that those properties were worth substantially more than the loans against the properties, and that they would have the benefit of a stream of payments from these third parties for high-interest loans, protected by security interests

6

and/or mortgages against such properties.  Shapiro and his lieutenants, represented to Investors that the Debtors' profits would be generated by the difference between the interest rate the Debtors charged its third-party borrowers and the interest rate it paid Investors.

22.      In reality, these statements were lies.  Investors' money was almost never used to make high-interest loans to unrelated, third-party borrowers, and there was no stream of payments; instead, Investors' money was commingled and used for an assortment of items, including maintaining a lavish lifestyle for Shapiro and his family, brokers' commissions, overhead (largely for selling even more Notes and Units to Investors), and payment of principal and interest to existing Investors.  The money that was used to acquire properties (almost always owned by a disguised affiliate) cannot be traced to any specific Investor.  These are typical characteristics of Ponzi schemes.

23.      Because the Debtors operated as a Ponzi scheme, obtaining new money from Investors into the Ponzi scheme conferred no net benefit on the Debtors; on the contrary, each new investment was a net negative.  Money was siphoned off to pay the expenses described above, so that the Debtors actually received only a fraction of the investment dollars.  New money also perpetuated the Ponzi scheme, as such money enabled the Debtors to return fictitious "profits" to early Investors – an essential component of the scheme, because "repaying" early Investors led to new investments, without which the house of cards would fall, as it eventually did.  At the same time, each investment created an obligation to return to the defrauded Investor 100% of the investment, such that each new investment increased the Debtors' liabilities and ultimately left them unable to satisfy their aggregate liabilities.

7

*The Proof(s) of Claim*

24.      Defendants Greg Anderson and Leenan were scheduled by the Debtors for claims against the Debtors. Defendant Balanced filed a proof of claim against the Debtors as designated claim no. 2994.  The scheduled and filed claims are identified on Exhibit 1 hereto (collectively, the "Claims").  The Claims are based on Notes held by Greg Anderson and Leenan and commissions claimed owed to Balanced.

25.      Defendants Greg Anderson and Balanced engaged in activities that generated investments in the Debtors.  Defendants Greg Anderson and Balanced are or were in the business of selling investment products, including the Debtors' Notes and/or Units, to retail investors. Defendant Greg Anderson, either individually or through Defendant Balanced, solicited and sold Notes and/or Units to investors.  Defendants received commission payments from the Debtors on account of Notes and/or Units sold to investors.  As identified on Exhibit 2, certain of the Debtors' funds directed to the Defendants to or through Defendant Balanced.

*The Transfers*

26.      Within the 90 days preceding the relevant transferor's petition date, Defendant Balanced received Prepetition Distributions of fictitious profits from the Ponzi scheme in respect of the Claims and commission payments totaling not less than the amount set forth on Exhibit 2 hereto (the "90 Day Transfers").  The precise transfers – including the transferor, its petition date, the date of each transfer, and the amount of each transfer – are set forth on Exhibit 2.

27.      Within the two years preceding the Initial Petition Date, Defendants received directly or as a pass through Defendant Balanced, transfers totaling not less than the amount set forth on Exhibit 2 hereto (the "Two Year Transfers"), including commission payments and

8

Prepetition Distributions from the Ponzi scheme in respect of the Claims.  The precise transfers – including the transferor, its petition date, the date of each transfer, and the amount of each transfer – are set forth on Exhibit 2.  The Two Year Transfers are inclusive of the 90 Day Transfers, but Plaintiff does not seek to recover the same sum more than once.

28.     Within the four years preceding the Initial Petition Date, Defendants received transfers totaling not less than the amount set forth on Exhibit 2 hereto (the "Four Year Transfers" and, collectively with the 90 Day Transfers and the Two Year Transfers, the "Transfers"), including commission payments and, in the case of Greg Anderson and Leenan, Prepetition Distributions of fictitious profits from the Ponzi scheme in respect of the Claims. The precise transfers – including the transferor, its petition date, the date of each transfer, and the amount of each transfer – are set forth on Exhibit 2.  The Four Year Transfers are inclusive of the 90 Day Transfers and the Two Year Transfers, but Plaintiff does not seek to recover the same sum more than once.

## FIRST CLAIM FOR RELIEF (AGAINST BALANCED FINANCIAL, INC. ONLY)
### Avoidance and Recovery of Preferential Transfers

29.     Plaintiff realleges and incorporates the aforementioned paragraphs as if fully set forth herein.

30.     The 90 Day Transfers constituted transfers of the Debtors' property.

31.     The 90 Day Transfers were made to or for the benefit of Defendant Balanced on account of an antecedent debt and while the Debtors were insolvent.  The affirmative assertion that the Debtors were insolvent at the times of the 90 Day Transfers is not intended and does not

9

shift the burden of proof or alter the presumption of insolvency provided by Bankruptcy Code section 547(f).

32.     By virtue of the 90 Day Transfers, Defendant Balanced received more than it would have received if the 90 Day Transfers had not been made and Balanced received a distribution pursuant to a chapter 7 liquidation.

33.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 547(b), 550(a), and 551: (a) avoiding the 90 Day Transfers free and clear of any interest of Balanced, (b) directing that the 90 Day Transfers be set aside, and (c) recovering the 90 Day Transfers or the value thereof from Balanced for the benefit of the Liquidation Trust.

## SECOND CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

**Avoidance and Recovery of Actual Intent Fraudulent Transfers – Bankruptcy Code**

34.     Plaintiff realleges and incorporates the aforementioned paragraphs as if fully set forth herein.

35.     The Two Year Transfers constituted transfers of the Debtors' property.

36.     The Two Year Transfers were made by the Debtors with actual intent to hinder or delay or defraud their creditors insofar as either (i) the services to be provided in exchange for such transfers would perpetuate a Ponzi scheme, or (ii) such transfers were prepetition distributions of fictitious profits from the Ponzi scheme in respect of the Claims.

37.     The Two Year Transfers were made to or for the benefit of Defendants.

38.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 548(a), 550(a), and 551: (a) avoiding the Two Year Transfers free and

10

clear of any claimed interest of Defendants, (b) directing that the Two Year Transfers be set aside, and (c) recovering such Two Year Transfers or the value thereof from Defendants for the benefit of the Liquidation Trust.

## THIRD CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

### Avoidance and Recovery of Constructive Fraudulent Transfers – Bankruptcy Code

39.     Plaintiff realleges and incorporates the aforementioned paragraphs as if fully set forth herein.

40.     The Two Year Transfers constituted transfers of the Debtors' property.

41.     The Two Year Transfers were made by the Debtors for less than reasonably equivalent value at a time when the Debtors (i) were insolvent; and/or (ii) were engaged or about to engage in business or a transaction for which any capital remaining with the Debtors were an unreasonably small capital; and/or (iii) intended to incur, or believed that Debtors would incur, debts beyond their ability to pay as such debts matured.

42.     The Two Year Transfers were made to or for the benefit of Defendants.

43.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 548(a), 550(a), and 551: (a) avoiding the Two Year Transfers free and clear of any claimed interest of Defendants, (b) directing that the Two Year Transfers be set aside, and (c) recovering such Two Year Transfers or the value thereof from Defendants for the benefit of the Liquidation Trust.

### FOURTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

**Avoidance and Recovery of Actual Intent Voidable Transactions – State Law**

44.     Plaintiff realleges and incorporates the aforementioned paragraphs as if fully set forth herein.

45.     The Four Year Transfers constituted transfers of the Debtors' property.

46.     The Four Year Transfers were made by the Debtors with actual intent to hinder or delay or defraud their creditors insofar as either (i) the services to be provided in exchange for such transfers would perpetuate a Ponzi scheme, or (ii) such transfers were prepetition distributions of fictitious profits from the Ponzi scheme in respect of the Claims.

47.     The Four Year Transfers were made to or for the benefit of Defendants.

48.     Debtors that made one or more of the Four Year Transfers has at least one creditor with an allowable unsecured claim for liabilities, which claim remained unsatisfied as of the Petition Date.

49.     The Four Year Transfers are avoidable under applicable law – California Civil Code section 3439.04(a)(1) and/or comparable provisions of law in other jurisdictions that have adopted the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act or the Uniform Fraudulent Conveyance Act – by a creditor holding an allowed unsecured claim and thus by Plaintiff pursuant to Bankruptcy Code section 544(b).

50.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 544(b), 550(a), and 551: (a) avoiding the Four Year Transfers free and clear of any claimed interest of Defendants, (b) directing that the Four Year Transfers be set

DOCS_LA:325881.4 94811/003

aside, and (c) recovering such Four Year Transfers or the value thereof from Defendants for the benefit of the Liquidation Trust.

### FIFTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

**Avoidance and Recovery of Constructive Voidable Transactions – State Law**

51.     Plaintiff realleges and incorporates the aforementioned paragraphs as if fully set forth herein.

52.     The Four Year Transfers constituted transfers of the Debtors' property.

53.     The Four Year Transfers were made by the Debtors for less than reasonably equivalent value at a time when the Debtors (i) were insolvent; and/or (ii) were engaged or was about to engage in business or a transaction for which any capital remaining with the Debtors were an unreasonably small capital; and/or (iii) intended to incur, or believed that it would incur, debts beyond their ability to pay as such debts matured.

54.     The Four Year Transfers were made to or for the benefit of Defendants.

55.     At the times of, and/or subsequent to, each of the Four Year Transfers, each Debtor that made one or more of the Four Year Transfers has at least one creditor with an allowable unsecured claim for liabilities, which claim remained unsatisfied as of the Petition Date.

56.     The Four Year Transfers are avoidable under applicable law – California Civil Code section 3439.04(a)(2) and/or comparable provisions of law in other jurisdictions that have adopted the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act or the Uniform Fraudulent Conveyance Act – by a creditor holding an allowed unsecured claim and thus by Plaintiff pursuant to Bankruptcy Code section 544(b).

13

57.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 544(b), 550(a), and 551: (a) avoiding the Four Year Transfers free and clear of any claimed interest of Defendants, (b) directing that the Four Year Transfers be set aside, and (c) recovering such Four Year Transfers or the value thereof from Defendants for the benefit of the Liquidation Trust.

## SIXTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

### Objection to Claims (Bankruptcy Code Section 502(d))

58.     Plaintiff realleges and incorporates the aforementioned paragraphs as if fully set forth herein.

59.     The Claims are not allowable because:

a.     Defendants have received property, *i.e.*, the Transfers, recoverable under Bankruptcy Code section 550; and/or

b.     Defendants have received a transfer, *i.e.*, the Transfers, avoidable under Bankruptcy Code section 544, 547, or 548.

60.     In either event, the Claims must be disallowed under Bankruptcy Code section 502(d) unless and until Defendants have fully repaid the amount, or turned over any such property, for which Defendants are liable under Bankruptcy Code section 550.

## SEVENTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

### Equitable Subordination of Claims

61.     Plaintiff realleges and incorporates the aforementioned paragraphs as if fully set forth herein.

62.     By providing services that helped perpetuate a Ponzi scheme, Defendants engaged in inequitable conduct.

63.     Defendants' inequitable conduct has resulted in injury to the Debtors' estates and their other creditors and/or has conferred an unfair advantage on Defendants.

64.     Principles of equitable subordination require that any claims asserted by Defendants be equitably subordinated to all other claims against the Debtors.

65.     Equitable subordination as requested herein is consistent with the provisions and purposes of the Bankruptcy Code.

66.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code section 510(c) equitably subordinating any and all claims that Defendants may assert against any of the Debtors, whatever the origin of those claims, including, without limitation, the Claims and any claims that may be asserted under Bankruptcy Code section 502(h), to all other claims against the Debtors.

## EIGHTH CLAIM FOR RELIEF (AGAINST GREG WYLEN ANDERSON AND BALANCED FINANCIAL, INC.)

### Sale of Unregistered Securities (Securities Act Sections 5(a), 5(c), and 12(a))

67.     Plaintiff realleges and incorporates the aforementioned paragraphs as if fully set forth herein.

68.     The Notes and Units sold by Defendants were securities within the meaning of the Securities Act.

69.     No registration statement was filed or in effect with the SEC pursuant to the Securities Act with respect to the securities issued by the Debtors as described in this Complaint and no exemption from registration existed with respect to these securities.

15

70.     From on or about July 2012 through at least December 4, 2017, Defendants

directly and indirectly:

        a.      made use of any means or instruments of transportation or communication
                in interstate commerce or of the mails to sell securities, through the use or
                medium of a prospectus or otherwise;

        b.      carried or caused to be carried securities through the mails or in interstate
                commerce, by any means or instruments of transportation, for the purpose
                of sale or delivery after sale; and/or

        c.      made use of any means or instruments of transportation or communication
                in interstate commerce or of the mails to offer to sell or offer to buy
                through the use or medium of any prospectus or otherwise any security,

without a registration statement having been filed or being in effect with the SEC as to such

securities.

71.     By reason of the foregoing, Defendants violated Sections 5(a) and 5(c) of the

Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

72.     The Investors who contributed their claims to the Liquidation Trust purchased the

unregistered securities issued by the Debtors and as a direct and proximate result sustained

significant damages.  Accordingly, the Liquidation Trust has standing under Section 12(a)(1) of

the Securities Act, 15 U.S.C. § 77*l*(a)(1), to bring a cause of action seeking damages based on

Defendants' violations of Section 5(a) and 5(c) of the Securities Act.

73.     As a result of the foregoing, Plaintiff is entitled to judgment holding Defendants

Greg Anderson and Balanced, jointly and severally, liable for the sale of unregistered securities,

in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF (AGAINST GREG WYLEN ANDERSON AND BALANCED FINANCIAL, INC.)

### Fraud

74.     Plaintiff realleges and incorporates the aforementioned paragraphs as if fully set forth herein.

75.     Defendants misrepresented the facts to Investors, including by making affirmative misrepresentations and by concealing and failing to disclose the true facts.  Among the misrepresentations were that Investors were often told that they were investing money to be loaned with respect to particular properties owned by third parties, that those properties were worth substantially more than the loans against the properties, and that they would have the benefit of a stream of payments from these third parties for high-interest loans, protected by security interests and/or mortgages against such properties.

76.     In reality, these statements were lies.  Investors' money was almost never used to make high-interest loans to unrelated, third-party borrowers, and there was no stream of payments; instead, Investors' money was commingled and used for an assortment of expenses, including maintaining a lavish lifestyle for Shapiro and his family, brokers' commissions, overhead (largely for selling even more Notes and Units to Investors), and payment of principal and interest to existing investors.  The money that was used to acquire properties (almost always owned by a disguised affiliate) cannot be traced to any specific Investor.

77.     Defendants made these misrepresentations knowingly, with scienter, and with intent to defraud Investors.

78.     The Investors who contributed their claims to the Liquidation Trust justifiably relied on Defendants' misrepresentations of facts, and as a direct and proximate result sustained hundreds of millions of dollars in damages.

79.     As a result of the foregoing, Plaintiff is entitled to judgment holding Defendants Greg Anderson and Balanced, jointly and severally, liable for fraud in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF (AGAINST GREG WYLEN ANDERSON AND BALANCED FINANCIAL, INC.)

### Aiding and Abetting Fraud

80.     Plaintiff realleges and incorporates the aforementioned paragraphs as if fully set forth herein.

81.     Shapiro – an architect of the fraud – also misrepresented the facts to Investors, and did so knowingly, with scienter, and with intent to defraud Investors.  The Investors who contributed their claims to the Liquidation Trust justifiably relied on Shapiro's misrepresentations of facts, and as a direct and proximate result sustained hundreds of millions of dollars in damages.

82.     Defendants knowingly and substantially assisted Shapiro in defrauding Investors and were aware of Shapiro's fraud and acted knowingly in providing substantial and material assistance to Shapiro.

83.     Defendants substantially benefited by receiving income, commissions, and bonuses.

84.     As a result of the foregoing, Plaintiff is entitled to judgment holding Defendants Greg Anderson and Balanced, jointly and severally, liable for aiding and abetting fraud, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, Plaintiff requests that the Court enter judgment:

1.     On the first claim for relief, (a) avoiding the 90 Day Transfers free and clear of any interest of Balanced, (b) directing that the 90 Day Transfers be set aside, and (c) ordering Balanced to pay to Plaintiff the amount of the 90 Day Transfers in the amount of $17,875.66;

2.     On the second and third claims for relief, (a) avoiding the Two Year Transfers free and clear of any claimed interest of Defendants, (b) directing that the Two Year Transfers be set aside, and (c) ordering Defendants to pay to Plaintiff the amount of the Two Year Transfers; provided, however, that Greg Anderson or Leenan shall not be liable for any Transfers that are set-offs as Prepetition Distributions to the claims in favor of Greg Anderson or Leenan;

3.     On the fourth and fifth claims for relief, (a) avoiding the Four Year Transfers free and clear of any claimed interest of Defendants, (b) directing that the Four Year Transfers be set aside, and (c) ordering Defendants to pay to Plaintiff the amount of the Four Year Transfers; provided, however, that Greg Anderson or Leenan not be liable for any Transfers that are set-offs as Prepetition Distributions to the claims in favor of Greg Anderson or Leenan;

4.     On the sixth claim for relief, sustaining the objection to the Claims, decreeing that Greg Anderson, Leenan and Balanced take nothing therefrom, and directing the Claims Agent to

strike Claim No. 2994 and the Scheduled "F" Claims identified on Exhibit 1 from the official

Claims Register;

5.        On the seventh claim for relief, equitably subordinating any and all claims that

Defendants may assert against any of the Debtors or their estates, whatever the origin of those

claims, including, without limitation, the Claim and any claims that may be asserted under

Bankruptcy Code section 502(h), to all other claims against the Debtors or their estates;

6.        On the eighth claim for relief, holding Defendants Greg Anderson and Balanced,

jointly and severally, liable for net damages in the amount of $5,543,219.57 for notes sold, and

for $1,419,110.19 for units sold, or in an amount to be proven at trial, arising from Defendants'

sale of unregistered securities;

7.        On the ninth claim for relief, holding Defendants Greg Anderson and Balanced,

jointly and severally, liable for fraud in the amount of $5,543,219.57 for notes sold, and for

$1,419,110.19 for units sold, or in an amount to be proven at trial;

8.        On the tenth claim for relief, holding Defendants Greg Anderson and Balanced,

jointly and severally, liable for aiding and abetting fraud in the amount of $5,543,219.57 for

notes sold, and for $1,419,110.19 for units sold, or in an amount to be proven at trial; and

DOCS_LA:325881.4 94811/003

9.      On all claims for relief, awarding Plaintiff prejudgment interest as permitted by

law, costs of suit, and such other and further relief as is just and proper.

Dated:  November 25, 2019

*/s/ Colin R. Robinson*
Bradford J. Sandler (DE Bar No. 4142)
Andrew W. Caine (CA Bar No. 110345)
Colin R. Robinson (DE Bar No. 5524)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:  bsandler@pszjlaw.com
        acaine@pszjlaw.com
        crobinson@pszjlaw.com

*Counsel to Plaintiff Michael Goldberg, in his*
*capacity as Liquidating Trustee of the Woodbridge*
*Liquidation Trust*